CARPENTER (ROSS v.). See Case No. 12,-072.

CARPENTER (TAYLOR v.). See Cases Nos. 13,784 and 13,785.

CARPENTER (TUCKER v.). See Case No. 14,217.

CARPENTER (UNITED STATES v.). See Case No. 14,727.

CARPENTER (WILLIS v.). See Case No. 17,-770.

CARPENTIER (COURTOIS v.). See Case No. 3,286.

CARPENTIER (UNITED STATES v.). See Case No. 14,728.

## Case No. 2,432.

### In re CARR.

[3 Sawy. 316;[1] 21 Int. Rev. Rec. 30.]

District Court, D. Oregon. March 27, 1875.

ALASKA, INDIAN COUNTRY — SECTION 23 OF THE ACT OF 1834 IN FORCE IN ALASKA — DETENTION OF PERSON ARRESTED IN INDIAN COUNTRY BY MILITARY AUTHORITY — ARREST BY MILITARY AUTHORITIES NOT AUTHORIZED EXCEPT UPON PROBABLE CAUSE.

1. Upon the extension of sections 20 and 21 of the Indian intercourse act of 1834 [4 Stat. 732] over the territory of Alaska by force of the act of March 3, 1873 [17 Stat. 530], said territory became, so far as the introduction and disposition of spirituous liquors therein is concerned, what is known in the law as "Indian Country," and, therefore, the military force of the United States may be employed therein for the arrest of persons who violate either of said sections.

[Cited in Waters v. Campbell. Case No. 17,-264; Kie v. U. S., 27 Fed. 352.]

[See U. S. v. Stephens, 12 Fed. 52.]

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2. Section 23 of said Indian intercourse act which authorizes 'the president to employ the military force of the United States to make arrests in the Indian country, was in force in Alaska so far as the introduction and disposition of spirituous liquors therein is concerned, from and after the extension of said sections 20 and 21 of said act over said territory.

3. No person arrested by the military authority in the Indian country for the introduction or disposition of spirituous liquors therein, contrary to law, can be lawfully detained by such authorities more than five days after such arrest before removing him for delivery to the civil authorities for trial.

[See Waters v. Campbell, Case No. 17,265.]

4. A military officer in making an arrest under said section 23 acts as an officer of the civil law, and to justify such arrest it must appear upon oath that there is probable cause, as provided in the fourth amendment to the constitution of the United States.

[Habeas corpus. Petition by John A. Carr for a writ of habeas corpus to inquire into the cause of his detention by the military authorities of the United States. The petitioner demurred to the return.]

Joseph N. Dolph and Joseph Simon, for petitioner.

Rufus Mallory, for respondent.

DEADY, District Judge. Two questions are made in support of the demurrer to the return: 1. That section 23 of the Indian intercourse act of 1834 has not been extended to Alaska, and therefore the military force cannot be employed in the apprehension of persons who may be found introducing spirituous liquors into Alaska; and, 2. That although the military force might have been employed in arresting the petitioner upon such charge, yet he could only be held in such custody five days before removal to the civil authority authorized to proceed against him according to law.

It appears from the petition and return that the petitioner, being the collector of customs at Fort Wrangel, in Alaska, was arrested by Lieutenant Dyer, of the army, in the latter part of September, 1874, upon the charge of violating section 20 of the Indian intercourse act, by introducing spirituous liquors into the country, in the month of July, without the consent of the war department; and that the petitioner was kept in custody by direction of Captain J. B. Campbell, commanding the district of Alaska, until the service of the writ herein on December 19, when he was sent in custody of Captain Jocelyn to this place, in obedience to the writ.

Section 1 of the Alaska act of July 27, 1868 (15 Stat. 240), having been amended by the act of March 3, 1873 (17 Stat. 530), so as to extend over the territory of Alaska. sections 20 and 21 of the intercourse act of 1834, said territory, so far as the introduction and disposition of spirituous liquors is concerned, became what is known as "Indian Country;" and the military force of the United States may be employed by the president for the arrest of persons found therein violating either

of said sections. To accomplish this result it was not necessary for congress to extend section 23 of the intercourse act by name over Alaska. By force of its own terms that section applies to any territory of the United States declared by congress, either in terms or effect, to be "Indian Country"—that is, a country in which the intercourse between the whites and Indians is regulated and restrained by special acts of congress. So soon, then, as Alaska was made "Indian Country," so far as the introduction and use of spirituous liquors is concerned, section 23 of the act which authorizes the employment of military force became applicable to it, and in force therein.

The president, by means of the proper officers, has authorized the employment of the military to make arrests in Alaska for the violation of said sections 20 and 21. If, then, there was sufficient cause to arrest the petitioner for said offense, Lieutenant Dyer was authorized to make it. Of course in so doing he was merely acting as a police officer—as a marshal or constable—for the purpose of enforcing an act of congress, and was not authorized to make the arrest unless it appeared upon oath or affirmation that there was probable cause as provided in the fourth amendment to the constitution of the United States. It is a mistake to suppose that the territory of Alaska is under military rule any more than any other part of the country, except as to the introduction of spirituous liquors and the making of arrests for violations of sections 20 and 21 aforesaid. in which case the military really act as civil officers and in subordination to the civil law.

As to the second point the demurrer is well taken. The petitioner having been detained over five days—indeed, nearly ninety—before any attempt was made to remove him for trial by the civil authorities, his detention thereafter became unlawful and unauthorized. The statute is peremptory upon the subject, and with good reason—"Provided, That no person, apprehended by military force as aforesaid, shall be detained longer than five days after the arrest and before the removal." If the removal cannot be commenced in that time the prisoner must be discharged. It was supposed by congress, as this proviso manifests, that these arrests would often be made at remote and out of the way places, where the prisoner would be comparatively helpless, without access to counsel or friends, and if the officer whose custody he was in was to be judge of when he would or conveniently could remove him to the civil authorities for trial, it might sometimes happen that the detention would be continued captiously or maliciously and the imprisonment become grossly oppressive. In Barclay v. Goodale [Case No. 972], this court, after able argument and full consideration of the premises, held that the defendant who had arrested the plaintiff under section 23 and detained him more than five days before removal, because he had no sufficient means wherewith to do otherwise, was liable for false imprisonment.

The petitioner is entitled to be discharged. I have also considered whether, upon the facts in the return, I ought now to commit the petitioner upon a charge of introducing spirituous liquors into Alaska, contrary to section 20 aforesaid. It is not alleged directly in the return that the petitioner was guilty of this offense, but only that he "was arrested for it." The evidence upon which the arrest was made is not stated in or attached to the return. I do not think the statement in the return is sufficient evidence or information to authorize a commitment by me.

The respondent then had leave to amend the return, and annex thereto, among other things, the affidavit of W. P. Wilson, taken before Lieutenant Dyer, on September 24, 1874, stating that in July he paid John A. Carr $100 for the privilege of taking a lot of liquors out of the bonded warehouse at Fort Wrangel to be taken to his own house in Wrangel, while at the same time said Carr made out a clearance of the goods to Glencora landing, British Columbia.

Objection is made that this affidavit was not made before an officer authorized to administer oaths. But it appears to have been duly taken in pursuance of paragraph 1031 of the army regulations of 1861, and upon it I will commit the petitioner to answer the charge, and fix his bail at $2,500.